# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | | |
|---|---|---|
| RAY FLAKE and KATHY FLAKE, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:07-0925 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| SCHRADER-BRIDGEPORT INTERNATIONAL, INC.; TOMKINS, PLC; ARVINMERITOR, INC.; JOHN DOES 1-10; APLPER HOLDINGS USA, INC.; ROBERT JOHN KILMARX; and KAREN MARIE KILMARX, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| JOHN ARMSTRONG and CHARLOTTE ARMSTRONG, | ) ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:07-0926 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| SCHRADER-BRIDGEPORT INTERNATIONAL, INC.; TOMKINS, PLC; ARVINMERITOR, INC.; JOHN DOES 1-10; APLPER HOLDINGS USA, INC.; ROBERT JOHN KILMARX; and KAREN MARIE KILMARX, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| DONALD ADKINS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:07-0927 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| SCHRADER-BRIDGEPORT INTERNATIONAL, INC.; TOMKINS, PLC; ARVINMERITOR, INC.; JOHN DOES 1-10; APLPER HOLDINGS USA, INC.; ROBERT JOHN KILMARX; and KAREN MARIE KILMARX, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# **M E M O R A N D U M**

Plaintiffs, in this action are Tennessee citizens, who filed this action originally in the Circuit Court for Dickson County, Tennessee against Defendants: Saltire Industrial, Inc., a Delaware corporation formerly known as Scovill, Inc.; Schrader-Bridgeport International, Inc., formerly known as Schrader Automotive, that operated a manufacturing plant in Dickson, Tennessee; Alper Holdings U.S.A., Inc., a Delaware corporation; Tomkins plc, the corporate parent of Schrader-Bridgeport; the City of Dickson, Tennessee; the County of Dickson, Lewis Edward Kilmarx, a Tennessee citizen; William F. Andrews ("Andrews"), chairman, president, and chief executive officer of Schrader-Bridgeport. Plaintiffs assert Tennessee common law claims for trespass, permanent nuisance, negligence, and state statutory claims for ultra-hazardous activity, and negligence per se for violations of other statutes. Plaintiffs also assert claims against the City of Dickson are under the Tennessee Government Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq. Plaintiffs' claims arise out of the contamination of a spring flowing through their property into which Defendants were improperly disposed or caused to be disposed hazardous wastes from the Dickson manufacturing plant.

The Defendant Schrader-Bridgeport timely removed this action, citing 28 U.S.C. § 1334(b), the federal bankruptcy jurisdictional statute, and 28 U.S.C. § 1452, the bankruptcy removal statute. After removal, this action was transferred to this Court because of its similarity to other cases currently pending before the Court. In earlier proceedings, the Court denied Plaintiffs' motion to remand this action concluding that under Sixth Circuit law, these actions are sufficiently related to Alper's bankruptcy proceeding to support jurisdiction under 28 U.S.C. § 1334(b). The Court also concluded that all of the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) were not met here.

Before the Court is Tomkins plc's revised motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 46), contending that it is a holding company that only buys, holds and sells companies from its headquarters in London, England. Among Tomkins' subsidiaries is Defendant Schrader-Bridgeport that is engaged in manufacturing in the United States. Tomkins plc contends that its officers and employees in the United States do not interact with nor conduct its subsidiaries' day-to-day operations.

In response, Plaintiffs cites Tomkins plc's substantial business in the United States and the presence of Tomkins plc's officers in the United States. Plaintiffs also cite Tomkins' daily taking of monies from its United States subsidiaries, including Schrader-Bridgeport and that Tomkins plc's subsidiaries failed to conduct their offices as independent entities.

## A. Analysis of the Motion

Tomkins has 57 employees at the London headquarters, (Docket Entry No. 56-2, Pappayliou Affidavit at ¶ 4). Tomkins Corporation, a separate Tomkins plc subsidiary in the United States, provides centralized management services to its subsidiaries Schrader-Bridgeport, the Gates Corporation and Tomkins Industries, Inc. Tomkins plc did not acquire Schrader-Bridgeport directly, but acquired Schrader-Bridgport's parent corporation through Tomkins Corporation, its subsidiary company for Tomkins plc's United States subsidiaries. (Docket Entry No. 56-4, Sullivan Affidavit at ¶¶ 4-6).

Tomkins plc's officers in the United States are: Terry O'Halloran, James Nicol, George Pappayliou, Alan Power, Mildred Woryk and John Zimmeran. Yet, there is not any proof of the those officers conduct Tomkins plc's subsidiaries day-to-day business operations within the United States. Plaintiffs cite the presence of George Pappayliou, Tomkins's general counsel in

3

the United States as circumstantial evidence of Tomkins plc's contacts for jurisdictional purposes. Plaintiffs also cite Tomkins plc's interrogatory response that employees in the Tomkins legal department are employed by the United States subsidiaries and provide legal service to those subsidiaries. Yet, Tomkins notes that those legal fees are paid by United States subsidiaries.

Tomkins plc reviews the reports prepared and submitted in a standardized format by its subsidiaries related to their financial performance. Tomkins plc provides the strategic vision for its subsidiaries, including the creation of business units and divisions that oversee certain operating entities. Tomkins plc's subsidiaries obtain Tomkins plc's approval for certain categories of capital expenditures. Certain Tomkins plc's officers provide some level of oversight over Tomkins plc's subsidiaries. A Tomkins plc officer acting in his capacity as president and sole director of Schrader-Bridgeport, approved two transactions (not involving Tomkins plc) in which assets were transferred from Schrader-Bridgeport to Tomkins Corporation in repayment to debt to Tomkins Corporation.

Schrader-Bridgeport's officers manage the day-to-day operations of Schrader-Bridgeport. Schrader-Bridgeport's raw material purchases and normal day-to-day spending do not require any approval from Tomkins plc. Schrader-Bridgeport's computer operating system "manages their finances, all of the details of manufacturing in their day-to-day operations, right through invoicing and cash collection. The have their own website for their own products relating to their individual business." (Docket Entry No. 253-9, Cervelli Deposition at 193). Schrader-Bridgeport files local taxes, has its own information technology and human resources staff, and maintains its own corporate records. Schrader-Brideport consults with its parent company officials, but ultimately makes its own decision. Schrader-Bridgeport decides its budgets and its management is

4

responsible for its day-to-day environmental affairs and policies.

Plaintiffs allege that Schrader-Bridgeport was undercapitalized because Tomkins plc "fraudulently transferred" assets from it, but transfer of assets occurred when Tomkins Corporation was acquired Schrader-Bridgeport. As to the Tomkins cash sweeps of the accounts, the proof is that Tomkins plc lacks a bank account in the United States and does not participate in the cash sweep. (Disser Affidavit at ¶ 7). Tomkins's United States subsidiaries conduct the cash sweep and those monies are not transferred to Tomkins plc. Id. at ¶ 7. Each of Tomkins plc's United States subsidiary maintains an account with Citibank, and at the end of each business day, the balances of those accounts, positive or negative, are aggregated, and, if negative, Tomkins Corporation supplies the necessary funds. Id. at ¶ 3. Tomkins Corporation maintains separate book accounts for each participating subsidiary. Id. A subsidiary's assets or liabilities are not affected by the sweep account and the cost to each subsidiary for this arrangement is less than if the subsidiary had to establish and pay fees for a separate bank account. Id. Plaintiffs lack proof that the funds from this account are available to Tomkins plc and Tomkins asserts that these funds are not available to Tomkins plc. Plaintiffs next identify two legal actions in the United Sates were filed against Tomkins plc in 1991 and on appeal in 1992. Tomkins plc notes its absence as a party in any legal actions in almost 20 years.

For their alter ego contentions against Tomkins plc, Plaintiffs cited a subsidiary's officer's testimony that:

> I don't know where Tomkins plc begins or ends. When I did business with the organization, we did not deal with it in terms of titles of businesses. It was always just people that we did business with. So I did business with people. You know, whether they were plc or not, I would have absolutely no knowledge.

(Docket Entry No. 53, Plaintiff's Opposition, Exhibit 9, Cervelli Deposition 8:4-11, August 14,

## B. Conclusions of Law

Upon a motion to dismiss for lack of personal jurisdiction, a District Court may rely on the submission of affidavits or conduct an evidentiary hearing under Rule 12(d) of the Federal Rules of Civil Procedure. Third National Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); 2A Moore's Federal Practice, § 12.07 (2d Ed. 1985). If an evidentiary hearing is not held, then the Court must view the pleadings and affidavits in the light most favorable to the plaintiff. Id. Here, the parties submitted affidavits.

In any event, plaintiffs need only make a prima facie showing that jurisdiction exists and all of the party's factual assertions of jurisdictional facts are presumed true and all factual disputes are decided in plaintiff's favor. WEDGE, 882 F.2d at 1089. The burden is upon plaintiffs to make a prima facie showing that the preponderance of the evidence shows that the Court has personal jurisdiction over. Tomkins plc. Id.

In diversity actions, the jurisdictional reach of federal district courts also is to be determined by the law of the state where the district court sits. Creech v. Roberts, 908 F.2d 75, 79 (6th Cir. 1990). Tennessee's Long Arm Statute subjects nonresident parties to the jurisdiction of state and federal courts that sit in Tennessee on any claim arising from:

(1) The transaction of any business within the state;

\* \* \*

(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

\* \* \*

(6) Any basis not inconsistent with the constitution of this   state or of the United

6

> States;
>
> * * *
>
> > (b) <u>"Person," as used herein, includes corporations</u> and all other entities which would be subject to service of process if present in this state.
> >
> > (c) <u>Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative</u>. (emphasis added).

Tenn. Code. Ann. §§ 20-2-214(a)(1)(4)(c)(b) and (c) (1986). The Tennessee long arm statute is construed to grant jurisdiction only to the limits of Due Process Clause of the Fourteenth Amendment. <u>Pickens v. Hess</u>, 573 F.2d 380, 385 (6th Cir. 1978).

There are two types of personal jurisdiction: "specific jurisdiction" and "general jurisdiction". As the Supreme Court explained: "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. <u>Helicopters Nacionales de Columbia v. Hall</u>, 466 U.S. 408, 414, nns. 8 and 9 (1984). In a word, general jurisdiction involves contacts of "continuous or systematic nature". <u>WEDGE Group, Inc.</u>, 882 F.2d at 1089. When a State exercises personal jurisdiction over a defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. <u>Id</u>.

In assessing whether this Court lacks personal jurisdiction over Tomkins plc, the Court is guided by the Supreme Court's decisions defining the requirements and limits of the Due Process Clause of the Fourteenth Amendment. In <u>Asahi Metal Ind. v. Superior Court of California Solano, City</u>, 480 U.S. 102 (1987), the Supreme Court concluded that a Japanese corporation's placement of a product in stream of commerce without more was insufficient to satisfy the minimum contact test under the Due Process Clause for the exercise of in personam jurisdiction

7

over the Japanese corporation. The Supreme Court reiterated that the touchstone determination under the Due Process Clause for the District Court's exercise of personal jurisdiction over a foreign corporation is whether the foreign corporation purposefully established minimum contacts in the forum state.

In <u>Asahi</u>, the Supreme Court reaffirmed its earlier holding in <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958), involving American corporations that minimum contacts must be established by evidence of some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of the forum's state laws. 480 U.S. at 109. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts. <u>Burger King Corp v. Rudzewicz</u>, 471 U.S. 462, 475 (1985); <u>Keeton v. Hustler Magazine Inc.</u>, 464 U.S. 770, 774 (1984), or of the "unilateral activity of another party or a third person.' 471 U.S. at 475; <u>Helicopters Nacionales de Columbia v. Hall</u>, 466 U.S. at 417.

In <u>Burger King</u>, the Supreme Court outlined the factors for determining whether the District Court possesses personal jurisdiction.

> <u>The due process clause</u> protects an individuals liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations". By requiring that individuals have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign, the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will or will not render them liable to suit.
>
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, <u>this fair warning requirement is satisfied if the defendant has "purposefully directed" his activities as resident of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities . . . and with respect to interstate contractual obligations, we have emphasized the parties who "reach out beyond one state and create continuing

> relationships and obligations with citizens of another state" are subject to
> regulations and sanctions in the other State for the consequences of their
> activities." (Emphasis added).

471 U.S. at 471-73.

The Court also noted that the

> "[j]urisdiction is proper however, where the contacts proximately result from
> actions by the defendant that create a 'substantial connection' with the forum.
> Thus, where the defendant 'literally' has engaged in significant activities within a
> state, or has created 'continuing obligations' between himself and the residents of
> the forum, he manifestly has availed himself of the privilege of conducting
> business there, and because his activities are shielded by 'the benefits and
> protections' of the forum laws, it is presumptively not unreasonable to require him
> to submit to the burdens of litigation in that forum as well".

471 U.S. at 475-78. To be sure, "some single or occasional acts related to the forum" can support a finding of personal jurisdiction, but not if the "nature and quality and the circumstances of their commission create only an 'attenuated' affiliation with the forum." 471 U.S. at 475, n.2.

In this Circuit, in <u>Southern Machine Co., Inc. v. Mohasco Industries, Inc.</u>, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit summarized the governing principles in a three-part test for determining whether consistent with due process, personal jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise or jurisdiction over
> the defendant reasonable.

401 F.2d at 381.

As the Sixth Circuit later stated "[t]he <u>sine quo non</u> of personal jurisdiction is the purposeful availment factor." <u>Dean v. Motel 6 Operating L.P.</u>, 134 F.3d 1269, 1273 (6th Cir.1998). To be sure, "merely entering into a contract ... would not, without more, establish

9

sufficient minimum contacts." Compuserv, Inc. v. Patterson, 89 F.3d 125, 1265 (6th Cir. 1996). In addition, the lack of physical presence in a state does not preclude a finding of in personam jurisdiction. See Burnham v. Superior Court of California, Marin County, 495 U.S. 604, 610 (1990).

In City of Monroe Employees Retirement System v. Bridgestone Corp., 399 F.3d 651 (6th Cir. 2005), the Sixth Circuit explained the need to exercise "great care and reserve" in exercising jurisdiction on international foreign corporations:

> Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. v. Superior Ct. of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
>
> . . . . .Applying that balancing test to this case, there is clearly potential, should this suit go forward, for some substantial burden on Kaizaki. The Supreme Court has cautioned that " [g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," id. at 115. . . , "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," id. at 114.

Id. at 666 (emphasis added).

For example, [i]t is entirely appropriate for directors of a parent corporation to serve as directors of it subsidiary" without incurring liabilty for the subsidiary. United States v. Bestfoods, 524 U.S. 51, 69 (1998). Moreover, for a international foreign corporation, Plaintiffs must show that the international corporation has contacts or ties to the forum state. In Niemi v. NHK Spring Co. Ltd., 543 F.3d 294, 308-09 (6th 2008), the Sixth Circuit explained that : "[Plaintiff] had the burden to show that [a Japanese corporation] was subject to the court's exercise of personal jurisdiction in Ohio based on its own conduct in Ohio" and that evidence of "a network of simultaneous board memberships or otherwise, actually controlled [an American corporation] or

10

controlled the decisions and actions made by [an American corporation] that resulted in [Plaintiff's] alleged injuries was simply too amorphous and speculative to justify stretching the long arm of personal jurisdiction across national borders to reach a Japanese corporation."

Plaintiffs cite In re Chocolate Confectionary II Antitrust Litigation, 641 F.Supp.2d 367, 378-400 (M.D. Pa. 2009) where a manager of British parent corporation conscripted its American subsidiaries to effect a centralized management for all of the corporate entities. There is no such showing here.

The more pertinent authority is Gordon v. Greenview Hospital, 300 S.,W.3d 635 (Tenn. 2009), where the Tennessee Supreme Court held that the presence of a parent corporation's officers in Tennessee did not justify a finding of general jurisdiction over the corporate parent.

> Ms. Gordon's lawyer has pointed to no case holding that corporate officers or directors maintaining an office or a residence in the forum state is sufficient to establish general jurisdiction over the corporation. And with good reason. A corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors. In this age of electronic communications, telecommuting, and distributed management, the fact that Greenview's officers and directors maintain offices in Tennessee does not, by itself, lead to the conclusion that the corporation has continuous and systematic contact with Tennessee or that the corporation is conducting business within the state.

Id. at 649-50. (citations omitted). There, the plaintiff "failed to demonstrate the extent to which [the defendant's] officers and directors were conducting the corporation's day-to-day business operations" from within the forum, the presence of the officers in the forum was not a substantial, systematic and continuous contact for the purpose of general jurisdiction. Id.

Under Gordon, "[p]arent and subsidiaries corporations are presumed to be separate and distinct legal entities." Id. at 651(citations omitted). As to a corporate parent, "general involvement with the subsidiary corporation's performance, finance and budget decisions, and

11

general policies and procedures does not provide a basis for attributing the corporation's contracts with the forum to the other for the purpose of personal jurisdiction." Id. at 651-52. The Tennessee Supreme Court rejected a claim that a foreign corporation's listing of its counsel as its principal address established personal jurisdiction over the foreign corporation. Id. at 654.

As to Plaintiffs' alter ego theory, in <u>Southeast Texas Inns, Inc. v. Prime Hospitality Corp.</u>, 462 F.3d 666( 2006), the Sixth Circuit applied Tennessee's law and stated:

> ("[T]he alter ego theory requires that the corporate structure cause fraud or similar injustice[;]" thus, "[m]ere dominion and control of the parent over the subsidiary [alone] will not support alter ego liability."); <u>Wallace v. Wood</u>, 752 A.2d 1175, 1184 (Del.Ch.1999) ( "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (footnote and internal quotations omitted). Accord Continental Bankers, 578 S.W.2d at 632 (the control of the parent corporation over the subsidiary "must have been used to commit a fraud or wrong[.]"); <u>Elec. Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.</u>, 691 S.W.2d 522, 526 (Tenn.1985) (quoting the <u>Continental Bankers</u> test); <u>Tenn. Racquetball Investors, Ltd. v. Bell</u>, 709 S.W.2d 617, 622 (Tenn.Ct.App.1986) (citing Continental Bankers and noting that under an alter ego theory of liability, "mere dominance, standing alone, does not render [a corporate director] liable for the corporate debts"; "[u]se of control to commit fraud or wrong" is also required to fix liability).

<u>Id.</u>, at 674. Plaintiffs do not present any evidence to meet this standard.

For these reasons, the Defendant Tomkins plc's motions to dismiss in these actions should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___15th___ day of March, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

12